# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SANTA FE COMMUNITY HOUSING TRUST,

    Plaintiff,

v.                                                                         No. CIV 18-0054 RB/KBM

CHERYL MAES,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Santa Fe Community Housing Trust's Motion for Summary Judgment, filed on October 17, 2018. (Doc. 25.) Jurisdiction arises under 28 U.S.C. § 1332. (*See* Doc. 1 at 2.) Having considered the submissions of counsel and relevant law, the Court will **GRANT** the motion and **STAY** this action pending arbitration.

**I.**     **Factual Background**[1]

On April 25, 2002, Ms. Cheryl Maes (Defendant) entered into a Lien and Purchase Agreement Notice (the Notice). (*See* Doc. 25-A.) This Notice acknowledges Defendant's participation in the City of Santa Fe, New Mexico's Housing Opportunity Program (HOP), a program Santa Fe established to address its community's "affordable housing needs." *See* Santa Fe Cty., N.M. Ordinance § 26-1.4(H),[2] http://www.santafenm.gov/document_center/document/2033.

---

[1] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Defendant Cheryl Maes, the nonmoving party. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court recites only that portion of the factual and procedural history relevant to this motion.

[2] The City of Santa Fe has since repealed and replaced the HOP with the Santa Fe Homes Program Ordinance. *See* Santa Fe County, N.M. Ordinance § 26-1 (Ord. #2005-30(A), § 30). This more recent ordinance provides that "[a]ll provisions of the . . . HOP[] remain in full force and effect with respect to any and all agreements executed by the city and others which were required by HOP or incorporated HOP provisions by reference." *See id.* § 26-1.8(E).

As a "HOP homebuyer," Defendant also entered into a Resale Agreement (the "HOP Agreement") with the City of Santa Fe on November 25, 2002.[3] (*See* Doc. 25-B.) The HOP Agreement explains that the City extended Defendant a HOP Lien, which is "a second mortgage lien created by the HOP developer for the benefit of the City, its agents, heirs, successors and assigns." (*See id.* ¶ 1(H).) The HOP Lien provided Defendant with assistance that enabled her to purchase a property at 1340 Avenida Rincon, #302, which she closed on in December 2002. (*See* Docs. 25-A; 25-C.)

The HOP Agreement "gives the City and its agents a right to exercise its right of first refusal" to purchase the property in certain circumstances, including in the event that the HOP homebuyer fails to make the property their primary residence or if there is notice of a mortgage or lien foreclosure or similar proceeding.[4] (Doc. 25-B ¶¶ 2.6(C), 3.1(B), (D); *see also* Doc. 25-A ¶ C.) If the City exercises its right to purchase the property and the parties to the HOP Agreement disagree about a purchase price, the parties are to resolve the dispute in arbitration. (*See* Doc. 25-B ¶ 3.4.) The HOP Agreement spells out how the property is to be sold and the proceeds distributed.[5] (*Id.* ¶ 1(I).)

On December 31, 2009, the City of Santa Fe assigned to Plaintiff Santa Fe Community Housing Trust (the Trust) "all of the City's right, title and interest to [Defendant's] HOP

---

[3] Defendant contends that she "did not understand the agreement . . . and felt forced to sign" the HOP Agreement. (Doc. 26 ¶ 4.) The Court finds this fact is not material to its decision.

[4] In response to Plaintiff's material facts on several issues regarding the HOP Agreement (*see* Doc. 25 ¶¶ 6, 8, 9, 11, 13–18), Defendant argues that the City did not have the legal authority to create and/or assign the HOP Agreement and that the HOP Agreement is invalid for a variety of reasons. (Doc. 26 ¶¶ 5, 7, 8, 10, 12, 13.) Defendant's responses are comprised of legal argument. The Court finds that Defendant has failed to rebut material fact Nos. 6, 8, 9, 11, and 13–18, and they are deemed undisputed.

[5] The HOP Agreement also contains a provision regarding transfers of the Lien. (*See* Doc. 25-B ¶ 2.4.) Defendant raises this provision as an issue that merits denial of the Trust's motion (*see* Doc. 26 ¶ 17), but the Court finds this fact is not material to its decision.

Agreement." (Doc. 25 ¶ 11 (citing Doc. 25-D).) "On June 14, 2016, the holder of the first mortgage on the Maes residence, Matrix Financial Services Corporation [(Matrix)], filed a complaint for an in rem foreclosure." (*See id.* ¶ 12 (citing *Matrix Fin. Servs. Corp. v. Maes*, D-101-CV-2016-01418, Compl. for Foreclosure (1st Judicial Dist., Santa Fe Cty., N.M. June 14, 2016)).) The Trust sent Defendant written notice on September 19, 2017, that as the assignee of the HOP Agreement, the "Trust was exercising its right of first refusal and was demanding to have discussions to establish the fair market value of the property" as provided for in Section 3.4 of the HOP Agreement (*Id.* ¶ 13 (citing Doc. 25-E); *see also* Doc. 25-B § 3.4.) When Defendant did not respond, the Trust—which was a defendant/cross-claimant in the state court action—"filed a motion for summary judgment seeking to foreclose in rem a [Community Housing Trust] mortgage and to establish [its] status as the assignee of the HOP Agreement." (Doc. 25 ¶ 14 (citing *Matrix Fin. Servs. Corp.*, D-101-CV-2016-01418, Mot. for Summ. J. (1st Judicial Dist., Santa Fe Cty., N.M. Sept. 14, 2017)); *see also* Doc. 25-C at 1).)

The state court granted the Trust's motion on January 19, 2018, finding that the Trust "is the assignee of the [HOP Agreement] . . . where, because of this foreclosure action, the . . . Trust has a right of first refusal to purchase the subject property from Defendant Maes."[6] *Matrix Fin. Servs. Corp.*, D-101-CV-2016-01418, Am. Summ. J., Decree of Foreclosure, & Appointment of Special Master, ¶ 3(C) (1st Judicial Dist., Santa Fe Cty., N.M. Jan. 19, 2018). (*See also* Doc. 25-F ¶ 3(C).) The court went on to find that the Trust had exercised its right to purchase the property

---

[6] The state court's January 19, 2018 Judgment amended one it had entered previously. Shortly before the Trust filed its motion for summary judgment in September 2017, the state court had filed judgment on Matrix's motion for summary judgment, awarding summary judgment to Matrix "and against Defendants Cheryl L. Maes, Zocalo Association, Inc. and Santa Fe Community Housing Trust . . . ." *See* Summ. J., Decree of Foreclosure, & Appointment of Special Master, ¶ A (1st Judicial Dist., Santa Fe Cty., N.M. Aug. 8, 2017). (*See also* Doc. 26-3 ¶ A.) After the Trust filed its motion, the Court filed an Amended Judgment and Decree in January 2018 as described above. *See* Am. Summ. J., Decree of Foreclosure, & Appointment of Special Master (1st Judicial Dist., Santa Fe Cty., N.M. Jan. 19, 2018). (*See also* Doc. 25-F.)

pursuant to the HOP Agreement, and "[t]he HOP Agreement provides for a methodology for establishing the purchase price of the subject property." (*See id.* ¶ 3(D), (E).) Finally, the court found that it would "not pass on the specific provisions of the HOP Agreement and [found] that its enforcement involves a collateral proceeding which may be pursued in separate litigation." (*See id.* ¶ 4.) Defendant has appealed this order. *See Matrix*, D-101-CV-2016-01418, Notice of Appeal (1st Judicial Dist., Santa Fe Cty., N.M. Nov. 9, 2018).

The Trust filed a separate complaint in the First Judicial District Court, seeking specific performance of the HOP Agreement and enforcement of the arbitration clause. (*See* Doc. 1-A.) Defendant removed the complaint to this Court on January 17, 2018.[7] (*See* Doc. 1.) The Trust now moves for summary judgment and asks the Court to order the parties to arbitrate as provided for in the HOP Agreement. (*See* Doc. 25 at 6.) The Trust also asks the Court to "retain jurisdiction to issue further injunction orders or appoint a Special Master to take Defendant[']s place and complete the . . . Trust's purchase of the residence pursuant to its right of first refusal. (*Id.* at 7.) Defendant opposes the motion and asks the Court to find that the HOP Agreement and/or the assignment of the HOP Agreement to the Trust is invalid and unenforceable. (*See* Doc. 26 at 14.)

## II. Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most

---

[7] Defendant filed for Chapter 7 Bankruptcy in 2004 and again in 2013. *See In re Maes*, BK Case Nos: 04-14871; 12-13033. Both cases were closed. *See* 04-14871, Notice of Bankr. Case Closed (Bankr. D.N.M. Oct. 18, 2004); 12-13033, Notice of Bankr. Case Closed (Bankr. D.N.M. Feb. 4, 2013). In March 2018, Defendant filed motions in the Bankruptcy Court. *See* 04-14871, Mot. for Contempt (Bankr. D.N.M. Mar. 12, 2018); Mot. to Modify Order Reopening Bankr. Case & Reimpose Automatic Stay (Bank. D.N.M. Mar. 29, 2018). Defendant "ask[ed] the [Bankruptcy] Court to use its equitable powers to intervene to reimpose the automatic stay in the reopened bankruptcy cases to stay prosecution of a foreclosure action on appeal in state court and to stay an action to enforce a HOP Agreement pending in federal district court." *See* 04-14871, Mem. Op. & Order Denying Mot. to Reimpose Stay, at *3 (Bankr. D.N.M. July 31, 2018). The Bankruptcy Court denied the motion and reclosed the case. *See id.*; *see also* 04-14871, Notice of Case Reclosed (Bankr. D.N.M. Dec. 13, 2018).

favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The respondent may not simply "rest on mere allegations or denials of [her] pleadings." *Anderson*, 477 U.S. at 259; *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("However, once a properly

supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.") (quotation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e)); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).

**III.     The Court will grant the Trust's motion and require the parties to arbitrate, because the *Rooker-Feldman* doctrine bars Defendant's attack on the state court's judgment.**

The Trust contends that because the parties have not agreed on a purchase price for the property at issue, it is entitled to an order enforcing the HOP Agreement's arbitration provision. (Doc. 25 at 6–7.) The Trust notes that Defendant has not obtained a stay of the state court's judgment, thus "it is fully enforceable through collateral estoppel." (Docs. 27 at 2 (citations omitted); 25 at 6.) Defendant has not provided evidence that the state court's judgment has been stayed pending her appeal to the New Mexico Court of Appeals. Instead, Defendant advances several arguments to convince the Court that the HOP Agreement is invalid and/or unenforceable. (*See* Doc. 26.) All are unavailing.

Defendant attacks the state court's findings that the Trust is the assignee of the HOP Agreement (*see id.* at 8–11), and argues that the state court made procedural errors in considering the Trust's motion for summary judgment (*see id.* at 11–14 (citing *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 390 P.3d 174 (N.M. 2017)). Defendant also questions whether "the HOP

Agreement was legally authorized by" state statutes. (*See id.* at 11.) Defendant's arguments are barred by the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine bars a lower federal court's review of state court decisions." *In re Kline*, No. 13-05-12174 MS, 2011 WL 3879485, at *7 (Bankr. D.N.M. Sept. 2, 2011), *aff'd*, 472 B.R. 98 (B.A.P. 10th Cir. 2012), *aff'd*, 514 F. App'x 810 (10th Cir. 2013). The Court is not to "act as an appellate court reviewing the state court disposition." *Id.* (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004) (internal citations omitted)). "The *Rooker-Feldman* doctrine is limited to preclude litigation of 'claims actually decided by a state court and claims inextricably intertwined with a prior state court judgment.'" *Id.* (quoting *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (internal quotation marks and citation omitted)). "A claim is 'inextricably intertwined' when the alleged injury resulted from the state court judgment itself[,]" *id.* (citing *Nudell*, 363 F.3d at 1075), or "when 'the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules[,]'" *id.* at n.17 (quoting *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (internal quotation omitted); citing *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000), *aff'd*, 2 F. App'x 78 (2d Cir. 2001) ("stating that '[t]he issues raised in a plaintiff's complaint are inextricably intertwined with a state court judgment if the federal claim would succeed only if the state court wrongly decided the issue'") (internal citation omitted)).

Defendant asks this Court to review the state court's decision, both substantively and procedurally. Defendant relies on *Phoenix Funding* to argue that the state court's decision to entertain certain arguments at the summary judgment stage was procedurally defective. (Doc. 26 at 12–13 (citing *Phoenix Funding*, 390 P.3d 174).) But to ask the Court to examine whether the

7

state court made procedural errors in considering certain claims, or in amending its summary judgment order, is an improper collateral attack on the state court proceedings. *See In re Kline*, 2011 WL 387 9485, at *7–8. Defendant also asks the Court to review the state court's findings regarding the assignment of the HOP Agreement, and to pass judgment on whether such an agreement is valid under state statutes. (Doc. 26 at 8–11.) To rule on this would, however, require the Court to decide whether the state court had applied state law correctly in examining the parties' contractual obligations. *See In re Kline*, 2011 WL 3879485, at *8. "The *Rooker-Feldman* doctrine bars such review." *See id.* Because Defendant's requested relief "is premised on the injury she suffered as a result of the entry of the Judgment . . . rendered upon an alleged erroneous application of state law" and alleged procedural errors, her "claim is inextricably intertwined with the prior state court judgment and this Court cannot consider it." *See id.*

## IV. Conclusion

The Trust asks the Court to enforce the HOP Agreement's arbitration provision. While Defendant asserts that she has established genuine issues of material fact to show that the state court made procedural and substantive errors in ruling for the Trust, Defendant's arguments are barred by the *Rooker-Feldman* doctrine. Thus, the Court finds there is no genuine dispute of material fact in the record properly before the Court, and it is appropriate to grant summary judgment to the Trust on the issue of arbitration.

**THEREFORE,**

**IT IS ORDERED** that Santa Fe Community Housing Trust's Motion for Summary Judgment (Doc. 25) is **GRANTED** as follows: (1) the Trust's request to compel arbitration is **GRANTED**; (2) the Court orders the parties to arbitrate regarding the fair market price as provided

for in the HOP Agreement; (3) the Court will **GRANT** the Trust's request that the Court retain jurisdiction, and the Court will **STAY** this case pending arbitration.

**IT IS FURTHER ORDERED** that the Trust shall file a status update with the Court no later than June 3, 2019.

**IT IS SO ORDERED.**

                                                                                 _____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE